### COMMERCIAL CREDIT CORPORATION v. CALIFORNIA SHIPBUILDING CORPORATION.

Civ. No. 5485.

District Court, S. D. California, C. D.
May 22, 1947.

Sprague & Sparks, William G. Junge and John Marvin Dean, all of Los Angeles, Cal., for plaintiff.

Thelen, Marrin, Johnson & Bridges and Robert H. Sanders, all of Los Angeles, Cal., for defendant.

MATHES, District Judge.

This action for work done, labor performed and materials furnished was commenced in the Superior Court of California by Commercial Credit Corporation, a California corporation. Plaintiff sues as assignee of an account claimed to be due from defendant, California Shipbuilding Corporation, a Delaware corporation, to Simpson Steel Company, a California co-partnership. Diversity of citizenship enabled defendant to remove the cause to this court.

Plaintiff has filed a motion for summary judgment. Defendant, admitting that there is no genuine issue as to any material fact, joins in the request that the cause be determined on plaintiff's motion for summary judgment.

The facts are stipulated. Early in 1945 defendant was engaged in the construction of "Liberty" ships pursuant to prime contract MCc-34764 between the United States Maritime Commission and defendant. In the performance of that contract, defendant requested Simpson Steel Company to submit a bid for the fabrication of certain materials. Subsequently defendant accepted the bid submitted and gave Simpson Steel a purchase order for those materials.

Simpson Steel fabricated and delivered the materials to defendant until August 16, 1945, when defendant notified Simpson Steel that the subcontract was cancelled pursuant to provisions of the purchase order, which provided for settlement of termination claims in accordance with the Contract Settlement Act of 1944. 41 U.S.C.A. § 101 et seq.

No final settlement has yet been reached as to the amount of Simpson Steel's termination claims under the subcontract. However, § 8(a) of the Contract Settle-

ment Act provides that: "It is the policy of the Government, and it shall be the responsibility of the contracting agencies and the Director (of the Contract Settlement Board) * * * to provide war contractors * * * (pending settlement of termination claims) * * * with adequate interim financing * * *." 41 U.S.C.A. § 108(a).

And § 9 of the Act provides that:

"(a) Any contracting agency *may make* advance or partial payments to any war contractor on account of any termination claim or claims, and *may authorize, approve, or ratify* any such advance or partial payments by any war contractor to his subcontractors, upon such conditions as it deems necessary to insure compliance with the provisions of subsection (b) of this section. * * *

"(b) Where any such advance or partial payment is made to any war contractor * * * by another war contractor * * * any amount in excess of the amount finally determined to be due on the termination claim shall be treated as a loan from the Government to the war contractor receiving it * * *. Where the advance or partial payment was made by a war contractor and authorized, approved, or ratified by any contracting agency, the war contractor making it shall *not* be liable for any such excess payment in the absence of fraud on his part· and shall receive payment or credit from the Government for the amount of such excess payment." 41 U.S.C.A. § 109 (emphasis added.)

In September, 1945, Simpson Steel submitted to defendant, on Office of Contract Settlement Form 4, an application for partial payment in the sum of $14,863.60. This application was subsequently forwarded by defendant to the Maritime Commission. Simpson Steel also sent defendant an invoice ·covering the proposed partial payment, with a notation thereon that the invoice had "been sold and assigned to" plaintiff. In addition, a proposal for final settlement, on Office of Contract Settlement Form 1b, was submitted.

On or about February 28, 1946, defendant received a letter from the Maritime Commission stating that "because of a federal grand jury indictment concerning Simpson Steel," further action upon the application for partial payment was to be suspended.

A month later the Maritime Commission notified defendant that Simpson Steel's partial-payment application was approved conditioned upon the submission of Form 4 revised in certain particulars. Subsequently Simpson Steel submitted Form 1b revised as well as a Form 4 revised.

The Maritime Commission then approved the application for partial payment in the amount of $11,194, but defendant refused to make such payment until after an audit of Simpson Steel's books of account.

Thereafter, in August, 1946, defendant's auditors, in conjunction with an audit team of the Maritime Commission, audited the books of the Simpson Steel Company. As a result of this audit, defendant's auditors came to the conclusion that the books of account were not complete and failed to support the termination claims of Simpson Steel. Defendant thereupon refused to make the partial payment.

Prior to the August audit, but after the Maritime Commission's approval of partial payment in the amount of $11,194, plaintiff instituted this action. Defendant's attorney thereupon wrote to the Maritime Commission informing them of plaintiff's suit. The Acting Regional Attorney for the Maritime Commission replied that: "In view of the irregularities disclosed by the partial audit of this claim, it appears advisable to withhold any payment thereon until the present [August, 1946] audit has been completed. Therefore, to the extent necessary, the defense of the action by the Contractor's own counsel is approved."

█ The only legal significance of an approval by the Maritime Commission, or other Government contracting agency, of a partial payment by a prime contractor to his subcontractor, is that the former will be protected, if not guilty of fraud, in the event the amount finally determined to be due is less than the partial payment. 41 U.S.C.A. § 109(b).

It is the policy of the Government, as declared in the Contract Settlement Act, to provide prompt and adequate interim financing to all war contractors and subcontractors. And responsibility for the effectuation of that policy is placed on the Office of Contract Settlement and all Government contracting agencies. 41 U.S.C. A. §§ 108, 109 and 110.

Plaintiff cites the last sentence of § 7(a), which reads: "Any such settlement (of any termination claim) of a subcontract approved, ratified, or authorized by a contracting agency shall be final and conclusive as to the amount due to the same extent as a settlement under subsection (c) of section 106 of this title, and no war contractor shall be liable to the United States on account of any amounts paid thereon except for his own fraud." 41 U.S.C.A. § 107(a). However, this provision refers to final settlements on a subcontractor's termination claims, and not to partial payments made by way of interim financing.

Section 9 of the Act provides that the contracting agency "may make" partial payments; hence partial payments are not mandatory upon the Government agency involved. Similarly, as to approval of partial payments by a prime contractor to his subcontractor, § 9 merely provides that the contracting agency "may approve" such payments.

Undoubtedly the purpose of providing Government approval was to encourage prime contractors to provide prompt interim financing to their subcontractors. Otherwise there would be no reason for protecting the prime contractor, who pays with such approval, from loss due to overpayment. But even where approved by the contracting agency, nothing in the Act imposes a statutory obligation upon a prime contractor to make partial payments to a subcontractor. And plaintiff does not contend there exists any contractual obligation apart from the Act to make such payment.

I am therefore unable to perceive any basis for holding that a legal obligation rests upon defendant to make partial payment pending settlement of Simpson Steel Company's termination claims, even assuming such partial payment has been approved by the Maritime Commission, and the approval has not been withdrawn.

For the reasons stated, summary judgment in favor of defendant will be granted upon plaintiff's motion for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

Counsel for defendant will submit findings of fact, conclusions of law and judgment pursuant to local rule 7 within 10 days.